## MOLLFULLEDA *v.* RAMOS.

### APPEAL from the District Court of San Juan.

No. 30.—Decided March 20, 1906.

POSSESSION AS OWNER.—Until the contrary is proved it is presumed that one having possession as owner has a valid and legal title.

ID.—LESSOR—LESSEE.—A lessee who may have contracted with the lessor as owner cannot afterwards deny the lessor's title.

ID.—RECORD OF POSSESSION—PRESCRIPTION.—The recording of the possession does not prejudice one with a better right, even if the title of the latter has not been recorded, unless the recorded title has been confirmed by prescription.

ID.—TITLE.—The right of one in possession should be respected, and one who attacks it must show a better title than that of the possessor.

ID.—POSSESSION OF THE PREDECESSOR IN INTEREST.—In counting the time of prescription the present possessor may add to the time in which he has been in possession, the time during which his predecessors in interest were in possession.

ID.—OWNERSHIP—RIGHTS TO REAL PROPERTY.—The ownership and other rights in real property prescribe after ten years as to persons present and after twenty years as to persons absent, if the possession has been in possession in good faith and under color or title.

ID.—PRESCRIPTION NOT BASED ON JUST TITLE—LEGAL OWNER—THIRD PARTY.— The principle that a prescription not based on a just title shall not prejudice third persons, unless a possessory title is recorded and then only from the date of recording, does not apply to the legitimate owner of real property or of real porperty rights or to his successors in interest, because with respect to them the title shall be determined and computed in accordance with the ordinary legislation and section 1850 of the Civil Code, which speaks of third persons in accordance with the definition of the Mortgage Law, is not in conflict with this doctrine.

ID.—PRESCRIPTION.—When a person is in possession by virtue of a right acquired in good faith from those who apparently had good titles, he is not prevented from acquiring the absolute title by reason of the prohibition contained in section 35 of the Mortgage Law.

APPEAL—EVIDENCE—BILL OF EXCEPTIONS—STATEMENT OF FACTS.—So that the Supreme Court may consider the evidence submitted at the trial, it is necessary that it come before it in a bill of exceptions or in a statement of facts.

The facts are stated in the opinion.

*Mr. Cuevillas* for appellant.

*Mr. Manuel F. Rossy* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

This is an appeal from a final judgment of the District Court of San Juan.

This suit was brought by Don Juan Mollfulleda as testamentary executor of his brother, Don Ramón, of the same surname, conferring upon the former full authority to prosecute this suit, which had already been commenced when the latter died, and as testamentary guardian of his minor children, he being relieved of all bonds.

That complaint at this time must be considered in connection with the following prayers:

"To annul possessory proceedings prosecuted by Don Francisco Ramos Latour.

"To cancel the record of possession made in favor of said Ramos in the Register of Property of San Juan

"To declare the dominion title of the property to which the said possessory title refers in favor of the plaintiff.

"The products from the date the possessory proceedings were commenced until the property in question shall have been returned were also prayed for.

"And finally the imposition of the costs upon the defendant was prayed for."

All of the foregoing prayers were granted by the judgment appealed from by Ramos, the date of which is the 30th of January of the year last past.

In their briefs the parties to the suit substantially agree upon the following facts:

1. That Mrs. Dolores Colón leased to Francisco Ramos Latour a landed estate, situated in Hato Rey, municipality of Rio Piedras, for the period of ten years, the latter binding himself to pay the stipulated rental of 10 *pesos* per month, and to pay the taxes, with other agreements which appear in the private document which was drawn up under date of the 15th of May, 1879. This contract was extended for ten years longer on the 20th of March, 1889, and appears on page 8 of this record.

2. That Ramón Mollfulleda bought from Mrs. Dolores Colón and her minor children the said estate, stating in the deed that the purchase was made for his minor children with

their money, and that the property proceeded from an inheritance of José Santiago Delgádo, husband of Mrs. Dolores Colón and father of the other vendors. It so appears in the public instrument of the 8th of January, 1890 (page 52). It does not appear that this instrument was recorded in the register of property.

3. That Francisco Ramos Latour, on the 21st of January, while the contract of lease of the property was still in force, instituted a possessory proceeding (*expedient posesorio*) which was recorded in the Registrar of Property of San Juan on the 30th of January, 1890, asserting that as far as the land of the *finca* was concerned he had acquired the same by virtue of a purchase from Andrés O'Kelly two months before. Ramón Mollfulleda opposed the said possessory proceedings, but no decision was rendered in the matter (page 10).

4. That Mrs. Manuela Aldao assigned all rights and shares which she had in a property situated in Hato Rey, municipality of Rio Piedras, to her children, José Santiago Delgádo and María de la Cabeza of the same surname, which rights it was said proceeded from her other son, Miguel Eugenio Delgádo, whose will and testament has not appeared. (Instrument of the 12th of April, 1870, page 93).

5. José Santiago Delgádo assigned his rights and shares to Andrés O'Kelly, and the latter transferred the same to Francisco Ramos Latour on the 23d of January, 1890, who also acquired those belonging to the children of Mrs. María de la Cabeza Delgádo by deeds drawn up on the 9th of August and 13th of November, 1890 (Pages 61, 63, 68 and 76).

6. That Ramos, after the acquisition of those rights and shares, or in other words on the 24th of December, 1890, and by reason of an appeal in a suit between him and Ramón Mollfulleda, agreed to buy from the latter the property in question, which agreements were not carried into effect, because, as Ramos states in his defense and brief, he was convinced that Mollfulleda had no right whatever to the same (page 110).

7. Ramón Mollfulleda died, leaving a last will and testament executed on the 29th of March, 1896; he declares in the said testament that his only properties are the estate in litigation, which he states he borrowed money from his brother, Juan, to the amount of $3,000, to purchase, and desires that his said brother be paid the aforesaid amount from the proceeds of the sale of the property; he appoints his said brother as testamentary executor, authorizing him to prosecute this suit, and constituting as his heirs, his father, Mateo Mollfulleda, and his natural recognized daughters, named Carmen, Margarita, Paula, Gregoria, Teresa, Ramona and Alejandrina (page 16).

8. That is does not appear that the conveyances of Ramos of the rights and shares in the property had paid any taxes.

9. That the property which the plaintiff claims is the same to which the possessory proceedings instituted by Ramos and the inscription of the same refer, or what is the same thing, both litigants agree as to the identity of the property claimed.

Upon what title then does the plaintiff found his action? He claims in the first place under the heirs of José Santiago Delgádo, as recited in a deed to Ramón Mollfulleda from Dolores Colón, and her children, and he also claims by prescription.

It was also shown that Dolores Colón and her children were in possession of the property in question with the intention of holding it, and it must be presumed until the contrary appears, that they held the same by a valid and legal title, as recited by them (sec. 450 of the Civil Code).

As against this recital and claim the appellant founds his defense on the unrecorded instrument of assignment of rights and interest to which reference is made in statements of fact numbered 4 and 5 and on the possessory *expendiente* recorded in his favor, but constituted before the execution of the deed of conveyance of such rights and interests. It does not lie in the mouth of Ramos to deny that Dolores Colón and her children had the natural and civil possession of the property

in dispute, because he contracted with her as a tenant and for nearly eleven years paid rent to her, and did other acts consistent with his relation as tenant. He had no right to proceed against his own acts, or contradict them by his conduct.

It is true that Ramos recorded the possession of the property in his name, but the record of possession does not prejudice the right of anyone with a better right to the property, although the title of the latter may not have been recorded, unless prescription shall have confirmed and secured the right which has been recorded or inscribed (art. 394, par. 5, of the Mortgage Law).

This right of prescription has not accrued in favor of Ramos because the record was made on the 30th of January, 1890, and this suit was commenced on the 26th of August, 1890.

What has Ramos done to rebut this presumption of possession and title on the part of the plaintiff? At a time when his possession as tenant was necessarily the possession of the owner, namely, Dolores Colón, and her successors in title, he went about securing transfers to himself of the claims to the same property, or parts of it, which the record showed were inscribed in the names of others. And not only by reason of his possession as tenant, and his attitude toward his landlord are his acts open to suspicion, but he must clearly show the validity of the titles under which he claims. Given the possession by the plaintiff, the burden was on Ramos to show his superior title.

It is suggested that the persons who sold the property to Mollfulleda for his children expressed or stated in the deed of conveyance that the property proceeded from the inheritance of José Santiago Delgádo, and that he, during his lifetime, assigned his rights and interests to Andrés O'Kelly, and therefore the succession of Mollfulleda could not inherit it. In answer to this contention it may be noted that the succesion of Delgádo was in possession of the property for a large number of years, and it seems strange that O'Kelly

should have done nothing to recover it by showing the title to which the defendant attaches so much importance. However, the sale by Delgádo to O'Kelly was made subject to the privilege of withdrawal. The right to withdraw or retract from the sale was stipulated to continue for three months, counting from the date of the contract, and from the prolonged silence of O'Kelly, ignoring for so many years the rights he had in the property, it may be presumed that he never acquired an irrevocable title to the same. There is still more reason for looking at the matter in this light when it is considered that the contract entered into between Delgádo and O'Kelly was principally for the object of guaranteeing the latter 250 *pesos,* he having gone security for the former on a promissory note for an equal amount, in favor of Eduardo Font, so that in case O'Kelly should be compelled to pay the said amount as surety he would be protected.

As it has been said before it does not appear that the instrument was recorded in the register of property, and if O'Kelly ever settled the title in his favor on account of the expiration of the time stated during which the vendor could recover his rights in the property assigned, it would be natural in a suit of this nature, where the titles are so deficient, that some effort should be made to show what O'Kelly guaranteed.

With respect to the titles which were transferred to Ramos by the Ubedas a different condition of affairs presents itself. The Ubedas claimed under Manuela Aldoa, and not under José Santiago Delgádo. As against a person in possession, as is the plaintiff, the title under which Ramos claims must be strictly proved, and we are not satisfied with the title of Manuela Aldoa or the manner in which she alleged she acquired it. Furthermore, the land which she claims is not identified in the deed of cession from her to her children.

None of these outstanding titles have been sufficiently proved to militate against the presumption of title which the possession of Doña Dolores Colón accredited.

There is another aspect to the question; namely, that of prescription. It has been shown that Mrs. Dolores Colón had the natural civil possession of the property. That she had the intention of holding the same as her own; that she was in such possession for more than ten years; therefore, if Mrs. Dolores Colón and her children sold to the children of Ramón Mollfulleda, the latter are the actual possessors, and can apply the time necessary for prescription uniting to their time that of their constituents (sec. 1861 of the Revised Civil Code). Then it appears that the children of Mollfulleda have been in possession for more than ten years.

Now then, the ownership and other property rights in real property prescribe in ten years, as to persons present, and in twenty years in regard to those absent, in good faith, and a proper title. The children of Ramón Mollfulleda were owners in good faith, because they believed that Mrs. Dolores Colón and her children, their vendors, were owners of the property, being as such entitled to transfer their title, and their title is just and proper, because it is legally sufficient to transfer the real property right the prescription of which we are discussing, and it is real and valid because the title of the inheritance of the succession Delgádo was never impeached by those who assigned to Ramos their rights and interests and he was less in a position to impeach it because he acknowledged it by entering into a contract of lease with Mrs. Dolores Colón, which was in force for more than ten years (sec. 1851, 1853 and 1854 of the Civil Code).

If Ramos should allege the principles set forth in the first three paragraphs of article 35 of the Mortgage Law, according to which a prescription not based upon a just title shall not prejudice third persons, unless a possessory title is recorded, and then only from the date of the inscription, it may be said that the principle does not include or apply to the legitimate owner of the real estate, or right, nor those who claim under him, according to the decision of the Supreme Court of Spain of the 11th of January, 1888, because in regard

to them the last paragraph of the same article provides that a title shall be determined and the time computed in accordance with the ordinary law (*legislación común*). Section 1850 of the Revised Civil Code is not in conflict with this principle, because that article refers to third persons defined in the Mortgage Law. The legitimate owner of the property under the foregoing article is not considered as a third person where he has either the absolute title, or color of title. In other words, where a man is in possession under a bona fide claim of title, acquired in good faith from those who have the apparent title, he is not prevented from acquiring an absolute dominion title by reason of the inhibition contained in article 35 of the Mortgage Law.

We think it appears sufficiently clear from the record, or from the facts conceded in this case, that the succession of Mollfulleda has acquired a valid title by prescription.

A good deal has been said in the brief of the appellant about the capacity of the parties to bring this suit, largely because of the contradiction between the testament of Ramón Mollfulleda and the deed to the Mollfulleda succession. In the former Mollfulleda stated that the property was bought for and with the money of his children, and in the latter he apparently attempted to dispose of it as his own. In the case of such a contradiction we must be governed by the terms of the deed of purchase and sale, and hold that the property belonged to the children of Mollfulleda, named Carmen, Margarita, Paula, Gregoria, Teresa, Ramona and Alejandrina Mollfulleda y Osorio.

We have entered into a discussion of the points argued before this court with some care, because the facts were practically conceded by both parties. In reality the judgment in this case would have to be affirmed in any event. The judgment of the court below was rendered on the 31st of January, 1905. At that time the present Law of Civil Procedure was in force, and the trial took place thereunder. In the trial proof was presented of three different classes; namely,

documentary, oral, and expert. No attempt has been made to present the facts in the shape of a bill of exceptions, or statement of facts. In the case of *The People of Porto Rico* v. *Pascual Borrás* (9 P. R. Rep., p. 370), we decided that the stenographer's notes were not sufficient certification of the evidence, and the reasoning and the law that governed that decision apply equally to the case where the proof is of a mixed nature, namely documentary and oral. This court has so decided in the case of *Cora May Belden de Smith et al.* v. *Gabriel González García,* decided on the 9th of March, 1906 (*ante,* p. 253), and the case of *Andrés Orsini y Santini* v. *Rafael Vera y Ythier and Eugenio Comas y Atresino,* decided on the 14th of March, 1906 (*ante,* p. 267).

In a case like. the one at bar we cannot be certain of the considerations of fact which induced the court to render its judgment unless such considerations of fact as presented to the judge are properly certified to by him, or by one of the methods prescribed by the Law of Civil Procedure.

For the foregoing reasons the judgment of the District Court of San Juan must be affirmed with costs to the appellee.

*Affirmed.*

Chief Justice Quiñones, and Justices Hernández and Mac-Leary concurred.

Mr. Justice Figueras did not sit at the hearing of this case.